IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARGARET FLOWERS                                                PLAINTIFF

               v.                     Civil No. 2:11-cv-02180-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                          DEFENDANT

**MEMORANDUM OPINION**

I.     **Factual and Procedural Background**

       Plaintiff, Margaret Flowers, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

       Plaintiff protectively filed her applications on July 24, 2006, alleging a disability onset date of May 1, 2006, due to depression, panic attacks, headaches, hypertension, diabetes mellitus, shortness of breath, battered wife syndrome, leg, knee, back, and neck pain, low iron, night blindness, carpal tunnel syndrome, post-traumatic stress disorder ("PTSD"), and auditory hallucinations. Tr. 50, 121, 175. On the alleged onset date, Plaintiff was forty-four years old with a general equivalency diploma and an associate's degree in science. Tr. 23-24, 125, 198, 458. She has past relevant work as a waitress. Tr. 198.

       Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 59-64, 67-70. At Plaintiff's request, an administrative hearing was held on April 15, 2008. Tr. 21-42, 306-328. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable

decision on October 1, 2008, finding Plaintiff was not disabled within the meaning of the Act. Tr. 47-58. Subsequently, the Appeals Council denied Plaintiff's Request for Review on March 6, 2009, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

On May 5, 2009, Plaintiff filed suit in this court, which ultimately resulted in remand to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), to allow the ALJ to consider Plaintiff's subjective complaints and to further develop the record concerning her mental impairments. *Flowers v. Astrue*, No. 2:09-cv-02052-BAB (W.D. Ark 2009). On November 2, 2010, a second administrative hearing was held. Tr. 329-363. Plaintiff was present at the hearing and represented by counsel. The ALJ rendered an unfavorable decision on March 4, 2011, finding Plaintiff was not disabled within the meaning of the Act. Tr. 286-305. Since there is no automatic request for review in cases on remand from the district court and Plaintiff did not file written exceptions within thirty days of receiving the administrative decision, the ALJ's decision became the final decision of the Commissioner. Tr. 281-283. Plaintiff now seeks judicial review of that decision.

## II.     Medical History

### A.     Don Ott, Psy.D.

On September 15, 2006, Plaintiff saw Don Ott, Psy.D., for a consultative mental evaluation. Tr. 197-204. Plaintiff reported a history of physical, emotional, and sexual abuse, as well as auditory hallucinations. Tr. 198-199. She also reported increased depression, fearfulness, and poor sleep, but denied suicidal ideation or intent. Tr. 200. Plaintiff had not received any prior mental health treatment, but reported taking antidepressant medication in 2004. Tr. 198.

On examination, Plaintiff was cooperative, but fairly anxious and tearful at times. Tr. 199. She was oriented to person, place, and time, and had no loss of contact with reality. Tr. 200. She appeared paranoid and was in an agitated, excited emotional state. Tr. 199. Her speech was rational, coherent, and goal-directed. Tr. 199. Dr. Ott found Plaintiff to be of average intelligence and noted no overt evidence of organic impairment. Tr. 201-202. He diagnosed Plaintiff with PTSD and nicotine dependence. Tr. 201. Dr. Ott noted that Plaintiff had never received appropriate mental health services and would require extensive cognitive-behavioral therapy to deal with her childhood sexual abuse and recent abuse by her husband. Tr. 201. He also noted that nicotine dependence aggravated Plaintiff's anxiety and paranoia. Tr. 201-202.

Dr. Ott found that Plaintiff's verbal skills were satisfactory and she reported no significant problems getting along with others, although she had very limited social contact due to her recent relocation to Arkansas. Tr. 202. In activities of daily living, Dr. Ott found that Plaintiff could manage personal hygiene without assistance, shop, cook, do laundry, and manage food stamps on her own. Tr. 203. Additionally, he found no specific limitations in the areas of concentration, persistence, or pace, although he noted that Plaintiff appeared distracted and hypervigilant during the interview. Tr. 204.

### B. C.R. Magness, M.D.

On October 17, 2006, Plaintiff saw C.R. Magness, M.D., for a consultative physical examination. Tr. 227-233. Plaintiff reported a history of auditory hallucinations, panic attacks, depression, PTSD, degenerative joint disease of the knees, bilateral carpal tunnel syndrome, high blood pressure, chronic obstructive pulmonary disorder ("COPD"), restless leg syndrome, headaches, diabetes mellitus, back pain, and peripheral vascular disease. Tr. 227-229.

On examination, Plaintiff's pulse oximetry was 97% on room air and her blood pressure was 138/90. Tr. 229. She was tachycardic, had increased A.P. diameter in her lungs, and prolonged expiration. Tr. 230. Range of motion was decreased by 10 degrees in Plaintiff's cervical spine and 30 degrees in her lumbar spine. Tr. 230. She had an abnormal straight-leg raise. Tr. 230. Range of motion was limited by 10 to 20 degrees in all of Plaintiff's extremities. Tr. 230. However, Plaintiff had normal reflexes and no muscle weakness or atrophy. Tr. 231. She also had decreased sensation on the top portion of her left foot and a "waddling" gait. Tr. 231. Dr. Magness described Plaintiff's ability as "ok" in the following tasks: tandem walk, hold a pen and write, touch fingertips to palm, oppose thumb to fingers, pick up a coin, stand and walk without assistive devices, and walk on her heel and toes. Tr. 231. Plaintiff was unable to squat and arise from a squatting position, and her grip was limited to 90%. Tr. 231. Dr. Magness gave Plaintiff several diagnoses, including PTSD, depression, panic disorder, COPD, degenerative joint disease of the knees, lumbago, peripheral vascular disease, and bilateral carpal tunnel syndrome. Tr. 233. He assessed Plaintiff with moderate to severe work-related limitations in walking, standing, lifting, and carrying, and moderate limitations in handling. Tr. 233.

C. **Agency Consultants**

On September 27, 2006, Brad F. Williams, Ph.D., an agency consultant, completed a Mental Residual Functional Capacity ("RFC") Assessment, in which he found Plaintiff moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, make simple work-related decisions, complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and

respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others. Tr. 220-223. He determined Plaintiff was capable of performing unskilled work. Tr. 222.

In a Physical RFC Assessment dated November 13, 2006, Robert Redd, M.D., an agency consultant, determined Plaintiff could occasionally lift/carry fifty pounds, frequently lift/carry twenty five pounds, stand/walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 234-241. He found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations, and determined she was capable of performing medium work. Tr. 236-241.

### D. Clarksville Medical Group

Plaintiff received routine care at Clarksville Medical Group. Tr. 263-280. On June 6, 2006, John C. Dunham, M.D., noted that an MRI of Plaintiff's cervical spine indicated some degenerative disc disease. Tr. 12. In December 2006, Plaintiff was diagnosed with hypertension and nicotine abuse and treated with Dyazide. Tr. 263. On May 9, 2007, Plaintiff's HbA1c level[1] was 8.6, which was considered high. Tr. 276. As a result, Plaintiff was prescribed Metformin. Tr. 264-265, 276. On May 24, 2007, Plaintiff reported some paranoia and auditory hallucinations, which Dr. Dunham believed to be associated with paranoid schizophrenia. Tr. 265. Plaintiff was treated with Geodon. Tr. 265. In June 2007, Plaintiff reported that she was still hearing voices on Geodon, so her dosage was increased. Tr. 266. Plaintiff was also placed on Simvastatin for cholesterol and her Metformin dosage was increased. Tr. 266. By August 21, 2007, Plaintiff's HbA1c level was within normal

---

[1] HbA1c levels reflect glucose control over the preceding two to three month period. THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 873 (Robert S. Porter, M.D., et al., eds., 19th ed. 2011).

range. Tr. 266-267, 272. She reported doing very well on Geodon and no longer heard voices. Tr. 266-267, 272. She did report some frequent urination at night, and was also treated for a left trapezius strain. Tr. 267.

On December 6, 2007, Plaintiff's hyperlipidemia was well-controlled, but Plaintiff had stopped taking Geodon completely and reported hearing voices again and feeling worse. Tr. 267. She was advised to restart Geodon. Tr. 267. Plaintiff stated that Flexeril had been helpful in treating her left trapezius strain. Tr. 267. By February 2008, Plaintiff's hyperlipidemia had dramatically improved and she was doing well on Geodon. Tr. 268. Plaintiff's HbA1c level was within normal range, indicating good control of her diabetes. Tr. 280. At this time, Plaintiff's medications included Norflex (discontinued in favor of ibuprofen), Simvastatin, Geodon, Dyazide, Glucophage, aspirin, and calcium with vitamin D. Tr. 268.

On April 16, 2008, Plaintiff complained of residual left trapezius pain. Tr. 499-500. Dr. Dunham referred Plaintiff for physical therapy. Tr. 499. It was noted that Plaintiff had lost fifty pounds and her diabetes was well-controlled by diet. Tr. 499. However, Plaintiff complained of auditory hallucinations despite taking Geodon. Tr. 499. Specifically, she stated that her toaster told her to take her child support payment to the casino. Tr. 499. As a result, Dr. Dunham determined that Plaintiff's paranoid schizophrenia was poorly controlled and arranged an appointment with Kevin Price, M.D. Tr. 499-500.

In May 2008, Dr. Price noted that he believed Plaintiff suffered from major depression with psychotic features. Tr. 497. He discontinued Geodon, increased Plaintiff's dosage of Effexor, and started her on Zyprexa. Tr. 495-497. In June 2008, Plaintiff complained of neck pain. Tr. 493-494. As a result, she was referred to River Valley Musculoskeletal Center for further evaluation and

treatment. Tr. 493-494.

### E. River Valley Musculoskeletal Center

Plaintiff was referred to River Valley Musculoskeletal Center for treatment of her neck pain. Tr. 486-491, 493-494. On June 30, 2008, Plaintiff saw John Hundley, P.A. Tr. 487-489. She reported left sided neck pain, tingling in both hands and fingers, and pain in the interscapular area that radiated into the base of her skull. Tr. 487. Plaintiff stated she had received multiple rounds of physical therapy with traction, with no significant improvement in her condition. Tr. 487. Plaintiff's medications included Triam HCTZ, Metformin, Zocor, and Effexor. Tr. 487.

On examination, range of motion of Plaintiff's cervical spine was greatly reduced, especially on extension, where she was limited to 10 degrees. Tr. 488. Plaintiff could touch her chin to her chest, but with significant discomfort. Tr. 488. Rotation was 15 to 20 degrees on the right and 20 degrees on the left. Tr. 488. Plaintiff carried her left shoulder significantly higher secondary to pain and spasms. Tr. 488. Deep tendon reflexes were 2/4 in the right upper extremity and 1/4 in the left upper extremity. Tr. 488. Plaintiff had equal strength in her bilateral upper extremities and her gait was normal. Tr. 488.

X-rays of Plaintiff's cervical spine revealed mild early degenerative changes. Tr. 490. An MRI was significant for multiple levels of degenerative disease, mostly mild overall. Tr. 488, 491. At the C5/C6 level, there was a small disc osteophyte complex with some mild narrowing of the left neural foramina. Tr. 520. At the C6/C7 level, there was a mild disc osteophyte complex causing slight narrowing of the left neural foramina. Tr. 520. As a result, Mr. Hundley recommended a round of epidural steroid injections. Tr. 486, 488-489. He noted that if Plaintiff did not experience improvement, he would order a myelogram with post CT of the cervical spine. Tr. 489.

### F. Summit Medical Center

On August 13, 2008, Plaintiff presented to Summit Medical Center with complaints of flank pain. Tr. 528-534. On examination, Plaintiff exhibited diffuse lumbar tenderness. Tr. 530. She was diagnosed with musculoskeletal pain and prescribed Flexeril and Darvocet. Tr. 530. She was instructed to lift no more than ten pounds and to follow up with her primary care physician. Tr. 531.

### G. Alma Cornerstone Clinic

On February 20, 2009, Plaintiff presented to Alma Cornerstone Clinic. Tr. 484. She reported cough and chest pain. Chest x-rays revealed prominent lower and mid-lung interstitial markings and moderate hyperinflation without cardiomegaly or nodules. Tr. 484. She was assessed with COPD and type II diabetes mellitus, under good control. Tr. 484. Plaintiff stated she had lost 82 pounds by dieting. Tr. 484.

In August 2009, Plaintiff's diabetes was under "great control" and she was instructed to stop taking Metformin. Tr. 483. On July 1, 2010, Plaintiff reported high blood sugar, leg pain, back pain, ear pain, and depression. Tr. 482. Plaintiff was assessed with diabetes mellitus, poor control, diabetic neuropathy, right middle ear effusion, clinical COPD, and hypertension. Tr. 482. As a result, she was placed on Metformin, Neurontin, and Bactrim. Tr. 482.

### H. Patricia J. Walz, Ph.D.

On December 22, 2010, Plaintiff saw Patricia J. Walz, Ph.D., for a consultative mental evaluation. Tr. 546-552. Plaintiff reported a history of hearing voices beginning in 2000. Tr. 546. Plaintiff stated she spent 90% of her time in her bedroom. Tr. 546. She reported no suicidal or homicidal ideation. Tr. 546. When asked about panic symptoms, Plaintiff stated that she believes "there is people out to get me" and has "tinfoil on my windows so they can't get in or shoot

something in at me." Tr. 546. She stated she was afraid of the microwave because it told her to do things. Tr. 547. She reported having panic episodes three times a week. Tr. 547. She also reported poor memory. Tr. 547. Plaintiff stated she did not have any psychiatric hospitalizations and last took psychiatric medication four years ago. Tr. 547. She currently took Metformin, Triam, and ibuprofen. Tr. 548. She had reportedly cut her smoking down to five cigarettes per day. Tr. 549.

When asked about her childhood, Plaintiff stated she had been physically and sexually abused by her stepfather. Tr. 547. She reportedly ran away at age fourteen and later earned a GED. Tr. 547. She has an associate's degree in science. Tr. 547.

On examination, Plaintiff appeared glum and sad and had poor eye contact. Tr. 549. Plaintiff's mood was sad and her affect was flat. Tr. 549. Her thought processes were logical and goal-oriented, but she reported paranoid thinking, auditory hallucinations, and fearfulness. Tr. 549. Dr. Walz estimated Plaintiff's intelligence to be in the low average range. Tr. 550. She diagnosed Plaintiff with chronic PTSD, schizoaffective disorder vs. schizophrenia, paranoid type, and dependent and paranoid traits. Tr. 550. Dr. Walz estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 45 to 55. Tr. 550. Dr. Walz noted that Plaintiff's capacity to communicate and interact in a socially adequate manner was impaired by her flat affect and anxiety. Tr. 551. She found that Plaintiff's attention and concentration were impaired, but noted that Plaintiff persisted well. Tr. 551. Speed of information processing was "quite slow" at times and Plaintiff would sometimes refer back to previously asked questions when the topic had already been changed. Tr. 551. Dr. Walz found no evidence of exaggeration or malingering. Tr. 551.

**III.** **Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner

to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV. ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since May 1, 2006, the alleged onset date. Tr. 291. At step two, the ALJ found Plaintiff suffers from carpal tunnel syndrome, back disorder, hypertension, diabetes mellitus, and mood disorder, which were considered severe impairments under the Act. Tr. 291. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 292-293.

At step four, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she could occasionally climb, balance, stoop, kneel, crouch, and crawl, and occasionally perform rapid, repetitive flexion and extension of the wrists. Tr. 293-298. Mentally, the ALJ determined Plaintiff could do work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment involved, and the supervision is simple, direct, and concrete. Tr. 293-298.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 298. However, after receiving vocational expert testimony, the ALJ found jobs existing in

significant numbers in the national economy that Plaintiff could perform.[2] Accordingly, the ALJ determined Plaintiff was not under a disability from May 1, 2006, the alleged onset date, through March 4, 2011, the date of the administrative decision. Tr. 299.

**V.     Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) failing to fully develop the record ; (B) dismissing her subjective complaints; (C) improperly determining her RFC; and (D) failing to include all her impairments in the hypothetical question posed to the vocational expert. *See* Pl.'s Br. 8-20. For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

---

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as small production machine operator, of which there are 4,000 jobs in Arkansas and 76,000 jobs nationally, food order clerk, of which there are 2,000 jobs in Arkansas and 50,000 jobs nationally, and small product inspector, of which there are 800 jobs in Arkansas and 41,000 jobs nationally. Tr. 298-299, 473.

Mentally, the ALJ determined Plaintiff suffered from severe mood disorder and limited her to unskilled work, i.e., work in which interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment involved, and the supervision is simple, direct, and concrete. Tr. 291-298; *See* 20 C.F.R. § 220.133(b).

This case was initially remanded for further development of the record concerning Plaintiff's mental limitations. On remand, the agency sent Plaintiff for a consultative evaluation with Dr. Walz. Tr. 546-552. Dr. Walz diagnosed Plaintiff with chronic PTSD, schizoaffective disorder vs. schizophrenia, paranoid type, and dependant and paranoid traits. Tr. 550. Dr. Walz estimated Plaintiff's GAF score at 45 to 55.[3] Tr. 550. She noted that Plaintiff's capacity to communicate and interact in a socially adequate manner was impaired by her flat affect and anxiety. Tr. 551. She also found that Plaintiff's attention and concentration were impaired, but noted that Plaintiff persisted well. Tr. 551. Speed of information processing was "quite slow" at times and Plaintiff would sometimes refer back to previously asked questions when the topic had already been changed. Tr. 551.

The ALJ afforded less weight to Dr. Walz's evaluation because it was performed after the administrative hearing and because he found it inconsistent with earlier medical evidence in the record. Tr. 297-298. Instead, he gave substantial weight to Dr. Williams' mental RFC assessment, which was completed on September 27, 2006, and was the only mental RFC assessment in the record. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence). Notably,

---

[3] A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. A GAF of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000).

Plaintiff did not begin treatment for schizophrenia symptoms until May 24, 2007. Tr. 265. Thus, in assessing Plaintiff's mental limitations, Dr. Williams did not have the benefit of the entire medical record, including subsequent treatment records from Dr. Dunham. Similarly, Dr. Ott did not have the benefit of these records when he performed the September 15, 2006, psychological evaluation.

Dr. Dunham diagnosed Plaintiff with paranoid schizophrenia and treated her with Geodon, which initially improved Plaintiff's auditory hallucinations. Tr. 265-268. However, on April 16, 2008, Plaintiff reported that Geodon was no longer effective in controlling her auditory hallucinations. Tr. 499. As a result, Dr. Dunham referred Plaintiff to Dr. Price, a psychiatrist. After evaluating Plaintiff, Dr. Price diagnosed her with major depression with psychotic features. Tr. 497. He instructed Plaintiff to discontinue Geodon, increase her dosage of Effexor, and begin taking Zyprexa. Tr. 495-497.

Notably, Plaintiff continued to experience auditory hallucinations and symptoms of paranoia throughout the relevant time period. At the second administrative hearing, Plaintiff testified that she put aluminum foil on her window "to keep things out" and once went to a casino after the microwave told her to spend her money there. Tr. 350-351. Plaintiff also testified that, due to panic and anxiety, she no longer goes outside by herself after dark. Tr. 351. Plaintiff's uncle, with whom she lives, confirmed this testimony. Tr. 358-359.

The medical evidence of record indicates that Plaintiff suffers from serious mental illness that has not been consistently controlled by medication. *See Vincent v. Apfel,* 264 F.3d 767, 769 (8th Cir. 2001) (citing *Dreste v. Heckler,* 741 F.2d 224, 226 n. 2 (8th Cir. 1984) (periods of remission in psychotic illness do not mean disability has ceased)). Although Plaintiff initially reported improvement on Geodon, she later reported continued auditory hallucinations despite treatment. Tr.

499. Moreover, in addition to auditory hallucinations, Plaintiff has also been diagnosed with PTSD, panic disorder, major depression with psychotic features, and schizoaffective disorder vs. schizophrenia, paranoid type, with dependent and paranoid traits. Tr. 201, 233, 265, 497, 550. In light of Plaintiff's various mental diagnoses and her very limited daily activities, it was error for the ALJ to rely solely on reports which were performed prior to the majority of Plaintiff's mental health treatment. Additionally, the ALJ should have requested an updated mental RFC assessment, either from Dr. Walz or one of Plaintiff's treating physicians. For these reasons, the undersigned finds that substantial evidence does not support the ALJ's RFC determination.

## VI.  Conclusion

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of her own limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 30th day of July 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE